UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,                    No. 2:23-cr-7

          vs.                                    Hon. Robert J. Jonker
                                                 United States District Judge
NATHAN WEEDEN,

                    Defendant.
_____/

<u>GOVERNMENT'S TRIAL BRIEF</u>

          May it please the Court, the United States submits this trial brief for the

Court's reference at the upcoming Final Pretrial Conference.

1. <u>Factual Summary</u>

          On or about September 21, 2019, swastikas and runes associated with "The

Base," a neo-Nazi organization, were spray-painted on Temple Jacob, a synagogue

in Hancock, Michigan. Law enforcement investigators uncovered the following facts,

which the government intends to prove at trial through testimony and exhibits:

          In April 2018, FBI agents responded to a bomb threat posted on internet site

ifunny.co ("iFunny") by an individual with the username "attack on your jimmies,"

(sometimes shortened to "AOYJ"). Agents determined the person 's associated with

the account was Nathan Weeden, then an 18-year-old high school senior in Saline,

Michigan. Weeden was interviewed at his parents' home on Brassow Road, and

admitted he was user AOYJ on iFunny. Weeden also admitted he owned several

firearms, including a Mauser bolt-action rifle, and a Mauser/Walther P38 pistol[1], which he kept in a storage unit because his parents did not approve. Weeden later created numerous social media and communications usernames using variations on "Brassow," including "Drassow" and "Drass."

After high school, Weeden moved to the Upper Peninsula and began his undergraduate studies at Michigan Technological University ("MTU") in Houghton. Houghton is adjacent to Hancock, Michigan, where Temple Jacob is situated. The Temple is within walking distance of the MTU campus.

During the spring and summer of 2019, MTU and Houghton police responded to a series of "stickering" incidents around town and on campus. The stickers read, "SAVE YOUR RACE, JOIN THE BASE," and included a QR code linking to a recruiting video for the organization:



---

[1] Both firearms were issued to Nazi forces in World War II.

2

In June 2019, Weeden participated in a telephonic "vetting" interview for formal induction into The Base.[2] Unbeknownst to Weeden, a freelance journalist had infiltrated the organization, and recorded the entire call. The call began with an announcement that "The person we're interviewing today is the guy in Michigan who put up the flyers at a local university … he goes by 'Drass' in chats, his name is D-R-A-S-S."

Weeden told the vetting committee that he was an "average college student," who heard about The Base through iFunny. He described himself as a monarchist, said he had been motivated by the "Turner Diaries,"[3] and favored pushing Jews out of the community:

Interviewer:    What do you expect these people to do when they come around to our way of thinking?

Weeden:    Well, they should be able to understand and pinpoint, almost all the problems of the system were the result of Jewish influence. So, when this Jewish system is coming apart, then they'd say, "Huh, when we piece it back together, maybe we don't let them in this time."

In July 2019, Weeden attended a live-fire training exercise with the Midwest Cell of The Base in Wood County, Wisconsin. Co-defendant Youssef Barasneh attended the event too, and later advised that The Base communicated using the encrypted application Wire. Barasneh said he knew the defendant as "Drass" and "Kolchak," (his screen name on the Wire chat), and later identified him as Nathan Weeden from photographs.

---

[2] "The Base" is a direct translation of "Al Qaeda" from Arabic.
[3] a 1978 novel depicting the overthrow of the United States government by an Aryan army in a future race war.

During the training exercise, Barasneh and Kolchak posed in a photo for the Midwest Cell of The Base. Barasneh identified Kolchak as the person on the far right, holding a distinctive AR-15 rifle that was later turned over to FBI agents by Weeden's father. A miniature of this photo is the icon for Kolchak in The Base's Wire chat group. Barasneh holds a black flag with the runes of The Base, wearing the skull mask favored by the group:



Barasneh advised that "Kolchak" gave him an old Russian Mosin-Nagant bolt-action rifle to use in training. Agents obtained records from MTU police and confirmed that a Mosin-Nagant rifle with the same serial number (among other firearms) was registered to Nathan Weeden while he was attending the university.

During the third week of September 2019, The Base encrypted chat group discussed what they called "Operation Kristallnacht." Co-conspirator Richard Tobin (AKA "Landser") wrote, "This impending operation will be the first of many steps on the path to victory." He went on, "Operation Kristallnacht: for far too long have we, the inheritors of the National Socialist Revolution, sat on our hands … The time has

come for use to act ... September 20th – 30th will be the general timeframe for your action.  You, as a revolutionary, will be expected to strike at the vulnerable lemmings, traitors, and their jewish puppet masters. Smash the glass, Slash the tires, leave the symbol of our revolution wherever you go, and burn whatever you please ... We refuse to be the latest victims in the Systems war on the white race. We will accept NOTHING LESS than VICTORY or MARTYRDOM!  Find your targets, do reconnaissance, and STRIKE when the time comes ... The sword has been drawn, there is no turning back. SIEG HEIL!”  Several other members of The Base responded to this call to action with “Sieg Heil.”

In a related Operation Kristallnacht operational planning chat, Landser discussed this call for “calculated action” as a way to “take back our image of strength and cohesion.” During this conversation, The Base leader Rinaldo Nazzaro (AKA “Roman”) wrote, “Don’t forget spray paint.” Landser responded, “Yes, The Base logo is very easy to tag buildings with.”  Landser also directed members to “Record and take pictures of flyers, DON’T record tires/windows.” He added, “Wear gloves, cover your faces at all times, shoe covers if you can manage it.”  Barasneh (AKA “Joseph”) joined in, saying “Imagine if across the country on local news, Everyone is reporting on neo nazi presence” to which Landser responded, “Let’s not imagine, let’s make it reality.” As the group was discussing operational targets, Landser directed them to “Focus on broad anti-white elements for now, though. Nigger cars, jew businesses etc.”

On September 18-19, 2020, "Kolchak" engaged in direct conversations about recruiting with Rinaldo Nazzaro. "Kolchak" also announced a "new postering plan," and revealed the design for the Base recruiting poster. Referring to the QR code in the corner, he explained that it linked to their recruiting video:



Later on September 19, 2020, Tobin wrote on Wire: "Reminder that today is the beginning of Op. Kristallnacht, act away brothers." Barasneh obeyed on September 20, 2020, and spray-painted anti-Semitic symbols and language on the building of Beth Israel Sinai congregation, a synagogue in Racine, Wisconsin. He later pled guilty to conspiracy against rights in violation of 18 U.S.C. § 241 and is expected to testify at Weeden's trial. (EDWI R. 2:20-cr-26, R. 31: Plea Agreement.)

The same night (September 20, 2019), Weeden turned off location services on his iPhone. After news of the vandalism was published the next morning, "Kolchak" bragged to his co-conspirators, "I did! Went good! Got articles written!!" In a private exchange a few days later, Barasneh teased "Kolchak" that he had painted the runes of The Base improperly on Temple Jacob. He recalled that "Kolchak" laughed off the criticism.



In the same message where he bragged about getting "articles written," "Kolchak" posted a link to an article about cinemas enacting a "no-singles" policy for screening the 2019 film *The Joker*. "Kolchak" frequently discussed the Joker character in The Base chat group:



Images later found on Nathan Weeden's iPhone revealed the same preoccupation with the Joker character, including memes conflating himself with both the Joker and Adolf Hitler:



Open-source collection of Weeden's "AOYJ" account on iFunny also disclosed a preoccupation with the historical character Admiral Alexander Kolchak, who fought for the monarchist cause in the Russian Civil War.



"Kolchak" continued to discuss his racial animus against non-whites with fellow Base members on the Wire chat after the vandalism of Temple Jacob:



9

When FBI agents interviewed Weeden in October 2020, he did not deny spray painting Temple Jacob. He said, instead, that he would not make any incriminating statements without "guarantees" in exchange for his cooperation. He did readily share, however, his knowledge that Alexander Kolchak was an officer in the Russian Army.

Agents seized and searched Weeden's iPhone and found numerous artifacts tending to establish his identity as the perpetrator. Among other things, his account name began with "Drass," and the screen saver was a photograph of Weeden with the same "flecktarn" uniform and rifle as in a Base recruiting image. In the recruiting image, he wears a patch with the Base runes on his chest:



Internal logs in Weeden's iPhone revealed that its location services had been switched off just before Temple Jacob was vandalized. The step monitoring function

in the iPhone's "Health" app, however, remained active. It showed that between 10:38 pm on September 20, 2019, and 3:42 am the next morning (when the vandalism was discovered), Weeden's phone took 5,978 steps, for a distance of approximately 4.1 kilometers. That is roughly the distance of a round trip from MTU to Temple Jacob on foot, depending on the starting point.

Weeden's phone contained a flowchart for preparing for the "big luau," a slang term for the "boogaloo," or second American civil war. The flowchart advised the reader to get "flecktarn" camouflage, and warned, "ZOG wants you dead."[4] It was signed, "Love KOLCHAK."



---

[4] A reference to the conspiracy theory that the U.S. Government is secretly controlled by Jews, AKA the "Zionist Occupied Government."

Weeden's iPhone also contained numerous photographs of the "Save Your Race, Join The Base" recruiting sticker in place, a guide to effectively deploying such recruiting materials, and a copy of The Base's "Field Guide to Recruitment."





Weeden's iPhone also contained a digital copy of a book titled *Beating the Police Interrogation*, by "Anonymous." Among other admonishments, the author advises "Admit Nothing, Deny Everything."



In June 2021, FBI agents unexpectedly received a handwritten letter from Weeden, in which he offered to become an informant. He provided a contact address beginning with "Drassow."

> To whom it may concern
>   I would like to inquire on the matter of employment as a confidential informent, & whether such work would be available and/or possible for me. Should you wish to contact me, I can be reached at drassow@ ████████, or my phone, ████████ in the event that Mark Hoff no longer has the number saved. To be clear, this is an inquiry for future work & is not an offering of information on accused past actions. Thus if you wish to reach out, my contact info is above.
>
>                    —Nathan Weeden

Agents met Weeden in September 2021 in a public location, and surreptitiously recorded their conversation. Agents tried to convince Weeden that his reluctance to "offer [ ] nation on the accused's past actions" would not benefit him. Weeden responded, "Well, in the game of poker, it's not very wise for a man to show his hand to another, I don't suppose."

Weeden later asked the agents, "How many years did Youssef Barasneh get for his conviction?" Agents told him that Richard Tobin, who also pled guilty, was already out of jail. Weeden said his "first and foremost" concern was that earning

13

money would be "extremely difficult, especially if one has felony degree, a felony charge."  The conversation continued,

| | |
|---|---|
| Agent: | Did you think about that when you joined [The Base]? Did you think it would ever lead to this day? |
| Weeden: | That would be an admission of guilt. |
| Agent: | Theoretically? I mean, when you— |
| Weeden: | Theoretically, individuals often don't consider the results of their actions in the moment. |

When asked what sort of outcome he was looking for, Weeden stated:

| | |
|---|---|
| Weeden: | Um, like I said, my goal's really pretty much, to um, not, ideally not face charges, or at the very least, uh, not face a conviction or time. And um, there's two ways I could get there. And the first is a countdown of four years. The second is, depending on the deals you guys claim to, uh, offer. |
| Agent: | What, what is the "countdown to," did I miss something there? Countdown to four years? |
| Weeden: | Statute [inaudible].[5] |

---

[5] At the time of the 2020 interview, there were four years remaining before the statute of limitations would prohibit charging the 2019 vandalism of Temple Jacob. 18 U.S.C. § 3282.

14

2. <u>Charges and Elements</u>

Count 1 of the indictment charges Weeden with conspiracy against rights, in

violation of 18 U.S.C. § 241. The elements are:

    (1)    First, that a conspiracy or agreement to commit a prohibited act
existed between at least two people;

    (2)    Second, that the purpose of the conspiracy was to injure, oppress,
threaten, or intimidate non-white or Jewish citizens of the United
States in their exercise or enjoyment of a right secured by the laws of
the United States, here, the right to hold real and personal property
free from discrimination; and

    (3)    Third, that the defendant knowingly and voluntarily joined that
conspiracy, specifically intending to achieve its unlawful purpose.

Count 2 charges Weeden with damage to religious property, in violation of 18

U.S.C. § 247(c). The elements are:

    (1)    First, that the defendant intentionally defaced, damaged, or destroyed
religious real property, here the Temple Jacob Synagogue, or
attempted to do so; and

    (2)    Second, that the defendant did so because of the race, color, or ethnic
characteristics of any individual associated with that religious
property.

Statutory and case law citations supporting and explaining the elements are

included in the government's proposed jury instructions.

3. <u>Other Pretrial Issues</u>

Issues detailed in the Court's order scheduling progression of the case (R. 21:

Order, PageID.38) are addressed below:

a. <u>Status of Plea Negotiations</u>

The defendant has rejected the government's plea offer and elected to proceed

to a jury trial.

b. <u>Legal and Evidentiary Issues</u>

i. <u>Authentication of Audio Recordings</u>

The government intends to introduce audio recordings from Weeden's 2019

interview to join The Base, and his 2021 conversation with FBI agents. These

recordings can be authenticated by the testimony of a witness with knowledge about

the conversation. Fed. R. Evid. 901(b)(1). They can also be authenticated through

"an opinion identifying a person's voice—whether heard firsthand or through

mechanical or electronic transmission or recording—based on hearing the voice at

any time under circumstances that connect it with the alleged speaker." Fed. R.

Evid. 901(b)(5).

Rule 901(a) does not require that an audio recording be authenticated by a

witness who was actually present for the conversation. *United States v. Puttick*, 288

F. App'x 242, 2008, 2008 U.S. App. LEXIS 16387 (6th Cir. 2008). Any witness

familiar with the recorded person's voice can authenticate the recording. *See United

States v. Brown*, 510 F.3d 57, 67-68 (1st Cir. 2007) (law enforcement officer familiar

with the defendant's voice based on hundreds of hours of listening to his telephone

conversations); *United States v. Breland*, 356 F.3d 787, 795 (7th Cir. 2004) (DEA agent qualified to identify defendants' voices on wiretap recordings based on personal interviews with defendants); *United States v. Wells*, 347 F.3d 280, 288 (8th Cir. 2003) (agent who worked with confidential informant authenticated conversation between informant and defendant).

A witness need not have extensive exposure to the voice or voices to authenticate a recording. *United States v. Thomas*, 690 F.3d 358, 372 (5th Cir. 2012) ("Rule 901(b)(5) merely requires that the witness have some familiarity with the voice he identifies."). *See also, United States v. Norman*, 415 F.3d 466, 472-73 (5th Cir. 2005) (DEA agent's hour-long discussion with defendant after arrest sufficient); *United States v. Trent*, 863 F.3d 699, 707 (7th Cir. 2017) ("We have consistently interpreted this rule to require that the witness have only 'minimal familiarity' with the voice."); *United Sates v. Cruz-Rea*, 626 F.3d 929, 935 (7th Cir. 2010) (listening to 15-second voice exemplar fifty to sixty times met "low bar of minimal familiarity.").

Once the profferor establishes the minimal level of familiarity necessary under the Rule, objections based on the extent of the witness's familiarity with the voice and any time gap between the identification and the basis of the witness's familiarity go to the weight of the evidence, not to its admissibility.

*5 Weinstein's Federal Evidence § 901.06* (2021).

Agents Fortunato and Erkkinen can authenticate Weeden's voice in their 2021 recorded conversation, because they were both present for the interview. They

were not present for his 2019 vetting call to join The Base, but they both recognize his voice with certainty. Their familiarity stems not only from the lengthy 2021 interview, but also from the previous interview in October 2020. Weeden can of course argue that it is not his voice on the recordings, but that argument would not preclude admissibility.

       ii.  <u>Bias evidence</u>

Because the defendant's motive is an element that the government must prove in prosecutions involving bias-motivated crimes, evidence that shows Weeden's bias should be admitted. See *United States v. Allen*, 341 F.3d 870, 886 (9th Cir. 2003) (upholding admission of color photographs of swastika tattoos, photographs of defendants in Heil Hitler poses, registration forms for Aryan Nations World Congress, and skinhead paraphernalia as direct evidence of motive element); *United States v. McInnis*, 976 F.2d 1226, 1230 (9th Cir. 1992) (admitting a "sign reading 'All Niggers Will be Executed,' [] dolls with nooses around their necks, and [a] machete in [a] sheath reading 'Nigger Sticker'" that served as direct evidence of racial motive); *United States v. Dunaway*, 88 F.3d 617, 619 (8th Cir. 1996) (evidence of racist views, speech, and conduct admissible in prosecution because motive was element of the crime); and *United States v. Magleby*, 241 F.3d 1306, 1315-20 (10th Cir. 2001) (racist lyrics of song admissible to prove the racially motivated crime charged, holding in the § 3631 context that "[t]he lyrics and Mr. Magleby's familiarity with them are probative of his racial animus in burning the cross[,]" and that "[t]he necessity of demonstrating the context in which the cross

was burned renders the [lyrics] and other evidence of hostility toward the presence

of African-Americas in this country intrinsic to a violation of § 241.") (emphasis

added).

Evidence of Weeden's animus against Jews and Black people is admissible as

direct evidence of the crimes charged. That includes his posting of "Save Your Race,

Join The Base" recruiting materials, photographs of Weeden in "Heil Hitler" poses,

his use of racial epithets like "kikes" and "niggers," and his expressed opinion that

Jews should be excluded from society.

In the alternative, this evidence is also admissible under Fed. R. Evid. 404(b),

which permits evidence of a defendant's prior crimes, wrongs, or other "bad acts" to

prove motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident. *See*, *e.g.*, *United States v. Talley*, 194 F.3d 758, 765

(6th Cir. 1999). Rule 404(b) is a rule of inclusion rather than exclusion; the list of

purposes for which other acts may be admissible is only illustrative, not exhaustive.

*United States v. Bakke*, 942 F.2d 977, 981 (6th Cir. 1991); *United States v.*

*Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985).

Acts demonstrating racial animus are probative of motive in hate crime

cases. *See*, *United States v. Whitt*, 752 F. App'x 300, 304 (6th Cir. 2018) (2013

vandalism with "swastika and markings associated with white supremacist gangs"

admissible to prove motive in 2016 trial for interference with civil rights); *United*

*States v. Woodlee*, 136 F.3d 1399, 1410 (10th Cir. 1998) ("[T]he government was

required to prove [the defendant] acted because of the victim's race, color, religion,

19

or national origin. Accordingly, it falls squarely within the motive and intent purposes delineated in 404(b)."); *United States v. Seale*, 600 F.3d 473, 495 (5th Cir. 2010) (evidence of racial animus and membership in KKK relevant to show motive and identity in kidnapping.)

### iii.   Identity Evidence

Fed. R. Evid. 404(b) also permits the admission of other acts to show identity. *See*, *United States v. Clemis*, 11 F.3d 597, 600-601 (6th Cir. 1993).  Such evidence should not be admitted, however, when identity is not in dispute. *United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993).

The FBI interviewed Weeden in 2018, after he reportedly posted a bomb threat on social media. Weeden admitted he was user "AOYJ" on iFunny, where the threat was observed. That admission is probative of his identity as "Kolchak," who bragged about vandalizing Temple Jacob. Among other things, "AOYJ" posted biographical material about Admiral Alexander Kolchak, and posted photographs of Weeden with the same "flecktarn" uniform and weapons "Kolchak" brought to Base training in Wisconsin. The government has offered a stipulation that Weeden was user "AOYJ" on iFunny. Should he reject that stipulation, his 2018 confession that he was user "AOYJ" should be admitted to prove it.

### iv.   Authentication of letter

The government intends to introduce Weeden's handwritten letter to the FBI offering his services as an informant. "To satisfy the requirement of authenticating an item of evidence, the proponent must produce evidence sufficient to support a

finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

"[P]roponents of exhibits … may prove their authenticity with circumstantial

evidence." *United States v. Cosgrove*, 637 F.3d 646, 658 (6th Cir. 2011). Handwriting

analysis is not necessary; the authenticity of the letter may be proven by its content

and external circumstances. For instance, in *United States v. Al-Din*, 631 F. App'x

313, 323 (6th Cir. 2015), the court properly admitted a letter signed with the

sender's nickname, where it was found in his nephew's car, and witnesses confirmed

he was known by the nickname.

In this case, the handwritten letter was actually signed by Nathan Weeden in

his own name, and mentioned Mark Hoff, an FBI Special Agent who had previously

interviewed him. It also included Weeden's phone number, and an e-mail address

beginning with "Drassow," a moniker connected with numerous Weeden social

media accounts. When FBI agents contacted Weeden, he appeared for the meeting,

admitted sending the letter, and discussed the terms on which he could become an

informant. The circumstances establish the authenticity of the letter, and it can be

admitted as his party admission under Fed. R. Evid. 801(d)(2)(A).

### v.  Conspiracy – Formal Agreement Not Required

Weeden may argue that he did not enter a formal agreement with other

members of the conspiracy, because he did not write back "I agree to execute

Operation Kristallnacht," or the words to that effect. But "[a] finding of conspiracy

does not require proof of formal agreement; a mere tacit understanding among the

participants is sufficient." *United States v. Harrison*, 663 F. App'x 460, 464 (6th Cir.

21

2016). That tacit understanding need not be proven by direct evidence; it "may be proven by circumstantial evidence, including by the defendant's participation in a common plan." *United States v. Lang*, 717 F. App'x 523, 545 (6th Cir. 2017).

Whether or not Weeden formally expressed his agreement is not dispositive. His agreement will be proven by, among other things, (1) his active participation in Operation Kristallnacht by vandalizing Temple Jacob, and (2) boasting to his co-conspirators that he had successfully executed the common plan announced in their encrypted chat group.

      c.  <u>Stipulations of Uncontested Facts</u>

The government has proposed the following stipulations:

•    That the evidence extracted from Weeden's iPhone is authentic. In the absence of a stipulation, the government will call the FBI Senior Digital Forensic Examiner who used Cellebrite to conduct the extraction.

•    That Weeden was user "Attack On Your Jimmies," or "AOYJ" on the social media site iFunny.co. In the absence of a stipulation, the government establish that fact through the (now retired) FBI Special Agent who interviewed Weeden in Saline, Michigan in 2018 regarding threats posted under that username.

•    That the "AOYJ" posts are authentic. In the absence of a stipulation, the government will authenticate them through the FBI Tactical Specialist who collected those posts from open-source internet media.

d.  <u>Preliminary Jury Instructions</u>

The government will submit its list of proposed jury instructions under separate cover, which were forwarded to the defense for consideration. With the exception of the instructions regarding the elements and definitions of the charged offenses, they are drawn from the Sixth Circuit Pattern Criminal Jury Instructions. The government therefore anticipates the majority of the instructions can be agreed upon.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: December 21, 2023              <u>/s/ Nils R. Kessler</u>
                                       NILS R. KESSLER
                                       Assistant United States Attorney
                                       P.O. Box 208
                                       Grand Rapids, MI 49501-0208
                                       (616) 456-2404
                                       *nils.kessler@usdoj.gov*